UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| XUAN PHAT DUONG, | CASE NO. C25-2095-KKE |
| Petitioner(s), | ORDER ON HABEAS PETITION |
| v. | |
| PAMELA BONDI, et al., | |
| Respondent(s). | |

Petitioner Xuan Phat Duong is a citizen and national of Vietnam detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. When Immigration and Customs Enforcement ("ICE") detained him on May 28, 2025, Duong claims he was told the arrest was due to a "change in policy." Duong now seeks relief from this Court to obtain his release from immigration detention, an order preventing removal to a third country without notice and due process, and an order barring removal to an unknown third country. Dkt. No. 1. For the reasons stated below, the Court will grant Duong's habeas petition in part.

## I. BACKGROUND

### A. Vietnamese Refugee Removal

Vietnam has long refused to repatriate Vietnamese nationals who came to the United States as refugees prior to 1995. Dkt. No. 1 at 5; *Nguyen v. Scott*, 2:25-CV-01398, --- F. Supp. 3d ---, 2025 WL 2419288, at *6 (W.D. Wash. Aug. 21, 2025). Tin Thanh Nguyen, an immigration

attorney who specializes in cases involving Vietnamese citizens and nationals, attests that "[b]ecause of Vietnam's refusal to issue travel documents, many Vietnamese nationals who came to the United States as refugees before 1995 and were ordered removed years ago, have continued to live and work in the United States and have regularly checked in with ICE in accordance with their [Order of Supervision] conditions." Dkt. No. 13-2 ¶ 7.[1]  In 2020, the United States and Vietnam signed a Memorandum of Understanding ("MOU"), which established criteria for the repatriation of pre-1995 immigrants subject to an order of removal.  Dkt. No. 13 at 5 (citing *Nguyen*, 2025 WL 2419288, at *14).  However, the criteria are not fully available to the public, and Respondents have not supplied the Court with that information in this case.  *Id.*; *see also Nguyen*, 2025 WL 2419288, at *14.

Despite the MOU, evidence submitted by Petitioner suggests that the repatriation of pre-1995 immigrants remains uncertain.  In a declaration originally filed in another recent case, and offered by Petitioner here, Assistant Federal Public Defender Katie Hurrelbrink asserted that of at least sixteen pre-1995 Vietnamese clients who have been detained by ICE, "[n]one have yet been removed to Vietnam."  Dkt. No. 13-1 ¶ 4 (originally filed in *Nguyen v. Bondi*, CV25-1833-JNW).  She explained that "[m]any of these clients have been in detention for months without receiving a travel document," including one who has been detained for six-and-a-half months.  *Id.* ¶ 5.  In Hurrelbrink's experience, "ICE often detains pre-1995 Vietnamese immigrants for months without taking the steps necessary for removal."  *Id.* ¶ 6.  On top of delays in processing by ICE, Hurrelbrink has "never seen Vietnam respond to a travel document request within 30 days."  *Id.* ¶ 7.  To Hurrelbrink's knowledge, only one of her office's pre-1995 Vietnamese clients has received

---

[1] Nguyen's declaration was originally filed in *Nguyen v. Scott*, No. 2:25-cv-01398-TMC-SKV and is offered by Petitioner here.

travel documents to date—in that case, ICE submitted his travel document request in August, and he did not receive notice of Vietnam's issuance of the document until October 23, 2025. *Id.* ¶ 8.

**B.    Petitioner Duong's Re-Detention**

Petitioner Duong is a Vietnamese citizen and national.  In 1982, when he was 14, he fled Vietnam as a refugee and came to the United States, where he became a lawful permanent resident. Dkt. No. 13 at 1; Dkt. No. 12-3 at 5.  On October 4, 2002, Duong was convicted of attempted possession with intent to distribute marijuana.[2]  Dkt. No. 12-3 at 5.  As a result of his conviction, Duong was issued a notice to appear for removal proceedings.  Dkt. No. 11 ¶ 5; Dkt. No. 12-3 at 3–4.  On December 30, 2002, an Immigration Judge ordered Duong removed to Vietnam.  Dkt. No. 12-2 at 3; Dkt. No. 12-3 at 2.

During this time, Duong was held in ICE custody for several months, beginning no later than December 5, 2002.  Dkt. No. 12-3 at 3 (listing Duong's address as Immigration and Nationality Service facility).  When ICE did not effectuate Duong's removal as prescribed by the Immigration and Nationality Act ("INA"), it issued an Order of Supervision ("OSUP").  Dkt. No. 12-4.  On about March 24, 2003, Duong was released from ICE custody pursuant to the OSUP. Dkt. No. 11 ¶ 6, Dkt. No. 12-4.  Since his release, Duong has not been convicted of any other crimes.  *See* Dkt. No. 12-2 at 3.  Between 2002 and 2025, Duong regularly reported to the ICE office in Seattle, Washington under the OSUP.  *See* Dkt. No. 12-4 at 2.

During a routine check-in on May 28, 2025, Duong was taken into ICE custody.  Dkt. No. 12-2 at 3.  ICE provided Duong with a letter stating that his supervision had been revoked.  Dkt. No. 12-2 at 4.  ICE informed Duong that the reason for his arrest was that there was a significant

---

[2] Duong was also arrested for aggravated robbery on August 30, 1986, though his FBI criminal record does not list a disposition.  Dkt. No. 11 ¶ 4.a.  On February 27, 1987, Duong was arrested for attempted theft by threat, for which he was sentenced to two years of confinement.  *Id.* ¶ 4.b.  Neither of these arrested are referenced in his removal order.

likelihood that ICE could remove him to Vietnam in the reasonably foreseeable future. *Id.* Duong's petition states that ICE officers informed him his arrest was due to a "change in policy." Dkt. No. 1 at 4.

Duong was subsequently "transported to [NWIPC] pending his removal." Dkt. No. 12-2 at 4. To date, Duong has been detained for over six months. On October 24, 2025, Duong filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his immigration detention as violating the INA, the Due Process Clause, the Administrative Procedure Act ("APA"), and other legal protections. Duong asserts three grounds for relief: (1) that his re-detention violates the Due Process Clause because there is no significant likelihood he will be removed in the reasonably foreseeable future; (2) that Respondents' third country removal policy violates the Due Process Clause, the Convention Against Torture ("CAT"), federal regulations, and the APA; and (3) that Respondents' third country removal policy is punitive and violates both the Fifth and Eighth Amendments.

As of November 18, 2025, ICE was "not able to obtain official documents establishing" Duong's Vietnamese citizenship, but hoped to find such documents in the "A file" of Duong's mother, which ICE had requested but not yet received. Dkt. No. 11 ¶ 11. Daniel Strzelczyk, an ICE deportation officer, explained that, if Duong's mother's A file does not contain documentation of his Vietnamese citizenship, "an interview will be conducted with the government of Vietnam to establish citizenship." *Id.* Thus, ICE has not yet submitted a request to Vietnam for a travel document to facilitate Duong's removal. *Id.* ¶¶ 8–11. Strzelczyk states that "Vietnam has agreed to increase cooperation with the United States and generally seek to issue travel documents within 30 days of a request being made." *Id.* ¶ 13. In his experience, however, "[f]rom the time that a request for travel documents is made until the issuance of travel documents is typically within 1–3 months." *Id.* ¶ 16. The Government's return states that it "is not the case" that ICE is "trying to

1    remove him to a third country" and that "ICE is currently working to remove Petitioner solely to

2    Vietnam." Dkt. No. 5.

3                                  **II.    DISCUSSION**

4    **A.    Legal Standard**

5           1.    <u>Habeas petition</u>

6           To succeed on a habeas petition, a petitioner must show he "is in custody in violation of

7    the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  "The essence of

8    habeas corpus is an attack by a person in custody upon the legality of that custody, and … the

9    traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*,

10   411 U.S. 475, 484 (1973).   A district court's habeas jurisdiction includes challenges to

11   immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v.*

12   *Kim*, 538 U.S. 510, 517 (2003).

13          2.    <u>Detention of noncitizens who are ordered removed</u>

14          Detention of noncitizens following an order of removal is governed by the INA.  "When

15   [a noncitizen] has been found to be unlawfully present in the United States and a final order of

16   removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a

17   subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held

18   in custody." *Zadvydas*, 533 U.S. at 682.  During the 90-day removal period, the Government "shall

19   detain" the noncitizen.  8 U.S.C. § 1231(a)(2)(A).  Once the 90-day removal period ends, the

20   Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6).  "[A noncitizen] ordered

21   removed who is inadmissible …, removable[,] … or who has been determined by the Attorney

22   General to be a risk to the community or unlikely to comply with the order of removal, may be

23   detained beyond the removal period[.]" *Id.*

24

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**B.  Duong's Prolonged Detention is Unlawful.**

Duong is a noncitizen and Vietnamese national who has lived in the United States for 43 years. He is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for over six months, Duong's detention is not "presumptively reasonable." *Id.* at 701. Through his petition and reply, Duong has provided evidence showing that Vietnam repatriates few pre-1995 immigrants (Dkt. No. 13-1 at 3–4, Dkt. No. 13-2 at 3–6), that Vietnam

generally does not issue travel documents to pre-1995 immigrants within 30 days and is unlikely to do so in the future (Dkt. No. 13-1 at 3–4, Dkt. No. 13-2 at 4), and that the United States government has failed to effectuate his removal for nearly 20 years (Dkt. No. 1 at 2).  Further, the record shows that, since his re-detention in May, ICE has not yet submitted a request for a travel document to the Vietnamese government for review and has not even located documents establishing his Vietnamese citizenship.  Dkt. No. 11 ¶ 11.  Duong has also shown that, as part of its travel document review, the Vietnamese government conducts interviews and site-visits with an individual's relatives in Vietnam to verify their identity, and considers "whether the individual has any family remaining in Vietnam, whether their Vietnamese identity can be verified, their criminal records, and the manner in which they left Vietnam and came to the United States, among many other factors."  Dkt. No. 13 at 5 (citing *Nguyen*, 2025 WL 2419288, at *15); Dkt. No. 13-2 at 5.  Duong's lack of a passport, Vietnamese birth certificate, family in Vietnam, or any Vietnamese identification documents could further delay issuance of a travel document.  *See id.*

Accordingly, Duong "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the burden shifts to the government to "respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.

Respondents generally maintain that "Petitioner's removal will likely occur in the reasonably foreseeable future" due to recent "increased cooperation with the government of Vietnam[.]"  Dkt. No. 10 at 8.  Deportation Officer Strzelczyk's declaration, however, suggests several additional steps before documents are transmitted to the Vietnamese government.  *See* Dkt. No. 11.  Indeed, ICE has not even located documents establishing Duong's Vietnamese citizenship yet.  *Id.* ¶ 11.  Strzelczyk's representation that, if ICE cannot find citizenship documents, "the government of Vietnam" will be interviewed (by whom, Strzelczyk does not say) does little to engender confidence that Duong will be removed in the reasonably foreseeable future.  *Id.*

1    Respondents provide no guidance as to how long the remaining process will take before ICE

2    submits a request for a travel document to the Vietnamese government, but note that once Vietnam

3    receives the request, it generally responds "within 1–3 months[.]"  *Id.* ¶ 16; Dkt. No. 10 at 6.

4    Notably, Respondents do not specify whether the 1 to 3-month timeline pertains to pre-1995

5    Vietnamese immigrants, despite Duong providing evidence of "various challenges inherent in

6    getting Vietnam to issue travel documents for pre-1995 arrivals to the United States."  Dkt. No.

7    13-2 ¶¶ 10–12 (Nguyen declaration stating "it can take many months to get any answer from

8    Vietnam about whether it will issue a travel document" for pre-1995 immigrants).  Moreover,

9    Respondents ignore evidence in the record establishing that the process for issuing travel

10   documents to pre-1995 immigrants "is highly dependent on the individualized facts of each case,

11   including whether the individual has any family remaining in Vietnam, whether their Vietnamese

12   identity can be verified, their criminal records, and the manner in which they left Vietnam …

13   among many other factors."  *Id.* ¶ 8.

14         Respondents' strongest piece of evidence to suggest removal is foreseeable is that Vietnam

15   has issued travel documents to 154 pre-1995 immigrants this year.  Dkt. No. 10 at 7–8 (citing

16   *Nguyen*, 2025 WL 2419288, at *17).  Duong does not dispute that the number of travel documents

17   issued to pre-1995 immigrants has increased.  *See* Dkt. No. 13-2 ¶ 8.  However, in *Nguyen*, Judge

18   Cartwright observed that 154 documents were issued in 225 cases, and the timeline between a

19   travel document request and its issuance was not specified.  *See* 2025 WL 2419288, at *17

20   ("[Declarant] does not clarify whether travel documents *issued* in FY2025 were also *requested* in

21   FY2025, or if they include requests made in previous fiscal years.").  Moreover, as in *Nguyen*,

22   here, Respondents' data "fail[s] to rebut the evidence presented by petitioner that his individual

23   circumstances make removal unlikely."  *Id.* (citing *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025

24   WL 1725791, *4 (D. Mass. June 20, 2025) (requiring an individualized analysis)).  Here,

Respondents do not provide the Court with the eligibility criteria Vietnam uses in determining whether to issue a travel document to a pre-1995 immigrant. They also fail to analyze or otherwise state any factual basis to support their belief that Vietnam will issue a travel document to Duong within 1 to 3 months of receipt of the request for travel documents. Respondents do not address, for example, whether Duong's lack of any family in Vietnam, the year that he left Vietnam, or his criminal conviction in the United States will affect the issuance of travel documents to him.[3] *See* Dkt. No. 13-2 ¶ 8 (non-exhaustive list of factors Vietnam considers in issuing travel documents).

Despite Respondents' contentions, Duong has now been detained for over six months, ICE has not yet located documentation of Duong's Vietnamese citizenship or submitted a request for travel documents to Vietnam, and Vietnam has not issued the travel documents necessary to effectuate his removal. "ICE is not permitted to hold [Duong] indefinitely while it waits for travel documents from Vietnam." *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025). The Court will therefore grant Duong's habeas petition and order his immediate release, subject to the conditions of his prior OSUP.

Duong also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a country other than Vietnam. Dkt. No. 1 at 14–16. For instance, he requests an order enjoining Respondents from removing him to a third country without notice and a meaningful opportunity to respond. *Id.* at 16. It is not clear to the Court whether Duong intends to continue pursuing these claims after obtaining his release. The parties are directed to meet and confer and file a joint status report by December 22, 2025, discussing whether these claims remain after Duong's release.

---

[3] Strzelczyk's declaration also states that, as of September 11, 2025, there have been 569 total removals of Vietnamese citizens to Vietnam in fiscal year 2025. Dkt. No. 11 ¶ 15. The declaration does not specify, however, how many of these removals involved pre-1995 immigrants, how many had criminal convictions or lacked family ties to Vietnam, or any other information about the removals indicating that removal of a noncitizen in Duong's position is reasonably foreseeable.

### III.  CONCLUSION

The Court GRANTS Duong's petition for writ of habeas corpus (Dkt. No. 1).  Respondents are ORDERED to immediately release Duong from custody under the conditions of his most recent order of supervision.

Dated this 15th day of December, 2025.

Kymberly K. Evanson
United States District Judge